## COLLIER v. THE STATE.

1. To sustain an indictment, it is not necessary that the record should shew the mode in which the jurors for the term were drawn. The *venire* will be presumed legal until the contrary be shewn.
2. It is sufficient, if it appear that the grand jurors were " selected as the statute provides." It is not necessary that it be stated that they were drawn by lot.
3. The whole record and proceedings are before the jury on the trial, and they may examine any part, though not read on the trial.
4. A clerk may lawfully make a certificate of attestation of a record, though he be not within his county.

THIS was a prosecution for larceny, commenced in the Circuit Court of Jackson, which, on application of the

prisoner, had been removed for trial to the Circuit Court of Madison, where he was tried and found guilty, and thence his case, on questions of supposed novelty and difficulty was referred to this Court.

In the record, as certified from Jackson county, was copied the *venire facias,* issued by the clerk in Jackson county, and returned by the sheriff; which was tested by the clerk under his hand, but without seal; and it did not appear in the record how the names of the jurors were drawn to be inserted in the *venire.* On the return of the *venire* into Court, the names of those who were summoned are recited, " out of whom, (says the record,) are *selected* as the statutes in that case provides, to wit: John M. Netherland, foreman, &c. (naming the others,) who being empanelled, sworn, &c." found the indictment, which was afterwards transmitted to Madison county.

At the trial in Madison Circuit Court, the prisoner's counsel objected to the reading of any of the papers transmitted from Jackson county, on the ground that they were not properly in Court. The clerk of the Jackson Circuit Court, stated on oath, that three days before the trial commenced, he came to Huntsville from Jackson county, bringing with him the original papers and transcript, with the certificate thereon, all open and unsealed; that on his arrival in Huntsville, he handed them over to the solicitor unsealed, who kept them till the morning of the trial, when, on their being returned to him, he, in Huntsville, and not in Jackson county, sealed them up, and handed them to the clerk of Madison Circuit Court. But the objection was overruled, and the original indictment was read to the jury.

The prisoner's counsel also moved the Court to quash the indictment, because, 1st. It did not appear that the grand jury of Jackson county, who found the indictment, were selected as required by law; 2d. The record shewed that the grand jury was *selected* from the original panel, instead of being drawn by lot; and 3d. The *venire facias* had no seal. Those objections were also made by demurrer to the proceedings, but they were all overruled, and the motion to quash was refused.

On the trial, the solicitor having read to the jury the indictment, but having read no more of the transcript from Jackson county, the counsel for the prisoner insisted that the jury should acquit him, on the ground that no part of the record had been read to them shewing the change of

JANUARY 1830.

Collier
v.
The State.

venue. But the Court instructed the jury to disregard this objection, and permitted them to take with them said transcript in their retirement, to which the prisoner objected. These several decisions were certified to this Court for revision.

BRANDON, for the prisoner. I shall waive the objection made for the want of a seal to the *venire*. But the record does not shew that the jurors whose names are inserted in it were drawn by the clerk, &c. as the statute directs; and this cannot be dispensed with. In criminal cases, nothing can be taken by intendment, and here the Court must intend this to have been done, else the law cannot be considered as complied with. Suppose in fact they were not drawn, could the clerk issue the *venire* of his own mere volition? And would the jury be legal unless drawn in the mode prescribed by the statute? All which the statute requires to be done, should be shewn to have been done, and it should appear in the record. This is not a mere directory statute. It directs the doing of an act which otherwise would be unauthorized; it creates a right and duty, and is not merely a statute which for greater certainty and uniformity, points out the mode in which a right or duty already ascertained may be performed. The officers appointed by law to select the jurors, are specially entrusted with the power of determining who shall be lawful jurors. The Court does not in any other way examine the grand jurors when they are sworn, to ascertain if they are lawful jurors, and cannot be informed in any other way, except by the record, that they were drawn according to statute, and that they were lawfully selected. The jury is an exceedingly important branch of our jurisprudence, and should be kept pure with great care, and every guard which the law has given should be enforced to preserve the purity of the grand jury. *a*

*a* Laws of Alabama, page 496. Acts of 1825-6, page 6.

The objection to the authentication of the transcript from Jackson county, is, that the clerk could neither do, nor complete any act as clerk, and requiring his official character, when he was out of the limits of his proper county. The letter and spirit of the constitution shews that it was intended that clerks should only act within the limits of the county for which they are respectively appointed. They are elected for the particular county only, and their authority is co-extensive only with its limits. When the clerk undertook to transport the papers of the

cause from Jackson to Madison, after passing the limits of his county, he lost the character of clerk, and had no more authority than any other messenger. The rule of practice adopted by the Supreme Court, requires the papers to be transmitted, sealed up, &c. Those papers were sent loose and open, and they were out of his hands for several days. It was improper to permit the clerk to swear that the indictment was the proper one. There was but one legal mode known to the law to make it evidence; it was the certificate of the clerk made in his proper county, and transmitted sealed as the rule requires. *a*

The demurrer should have been sustained, because by the record it appeared the grand jury were selected on the return of the *venire,* and not drawn by lot, as required by law. The word used is precisely opposite in meaning to what the statute requires. This statement in the caption of the indictment, must be taken as true, and the demurrer reaches into the caption of the indictment. How then can it be said they were lawfully empanelled, when it is expressly stated they were selected? Suppose it appeared in so many words that the Judge made choice of particular persons out of the names returned on the *venire,* would it be lawful? The statement here is tantamount. The language used, forbids the supposition that they were drawn. *b*

STEWART, for the State.

By JUDGE COLLIER. The questions, as presented, require an opinion on these points:

1. Should it appear from the indictment, or elsewhere on the record, that the jury summoned on the *venire* for the term, were chosen as required by statute, by a particular recital of the manner in which they were chosen?

2. Should it appear *in totidem verbis,* that the grand jury was selected, as the law requires?

3. Can the papers of a cause be taken by the jury in their retirement, if not read to them before?

4. Can a clerk, from whose Court a cause has been removed by change of venue, certify the original papers of the cause, seal them up with a certified copy of the entries in relation to it, and deliver them over to the clerk of the Court to which it is removed, while without his county?

1. No reason suggests itself to us why the indictment, or any other part of the record should discover how the

*a* 1 John Rep. 498.

*b* Laws of Alabama, 496, section. 3. 1 Chitt. Crim. law 358, Tom. index 103. Lord Raymond, 1038, 1179. 3 Salk. 187. Strange 598. 1 T. R 316, 1 Ch. Pl. 241.

panel of jurors were drawn. It is certainly no part of the appropriate office of the indictment; and if it be a material part of the record, we think it sufficiently appears from the *venire* itself, that the jury was regularly drawn. The part of the *venire* to which we have reference, after reciting the names of the jurors, proceeded thus: " being good and lawful jurors of your county, duly appointed as the statutes require." The manner of appointment directed by the statute can be no other than legal, and we must suppose that they were so appointed. By so supposing, the plaintiff in error cannot be prejudiced, for if the jury have not been drawn pursuant to law, he may shew the irregularity to the Court by proof, under an issue adapted to its admissibility.

2. With regard to the second point, it need not appear from any part of the record, that the grand jury was chosen from the panel " by lot;" any words of an equivalent import are equally good as those employed by the statute. It appears from the record, that the grand jury were " selected, as the statutes in that case provides." These words convey to the understanding the idea of being chosen either ' by lot,' or such other way as the statutes require; and are therefore sufficient for all legal purposes.

If, however, it did not appear that the grand jury were drawn pursuant to law, if the record was silent on this point, we should be disinclined to give to the prisoner any benefit from the exception. If the objection was well founded, he might have availed himself of it *by plea in abatement.*

3. In respect to the third point, it is sufficient to say that all the records and proceedings of a cause are considered before the jury when it is submitted to them, and whether read or not, are subject to their examination.

4. On the last point, it is insisted that the law is in favor of the prisoner, because this Court have, where there is a change of venue, directed the original papers, and the entries relative thereto, to be certified and transmitted in a manner different from what they have been in the present case. The rule relied on is the 8th rule for the government of the practice of the Circuit and County Courts, adopted at May term, 1820. So much as is pertinent, is in these words: " Whenever a change of venue shall be awarded, it shall be the duty of the clerk to subjoin to the original papers belonging to the suit, a transcript of all en-

tries relative to the same, the whole of which being enclosed under seal, shall be sent by some discreet peron to the clerk of the Court to which the suit shall be removed, &c." This rule, it may be remarked, does not require the clerk to certify and seal the papers at any particular place. And if it was competent for him, before its adoption, to do this elsewhere than in the county of which he was clerk, we can discover no reason why he should not be permitted to do so now. In this case, the clerk certifies under his private seal, because he has no official seal. Our reasoning as well our conclusion, is therefore designed for the particular state of fact, leaving the general proposition to be determined when a fit case shall present itself.

In order to make the proper certificates, the clerk should compare his transcript with the minutes of the Court. The original papers are only to be identified with the papers of the cause, and if the clerk is informed as to the correctness of the transcript, and the identity of the papers, he may make a certificate at any place. The case relied on by the plaintiff in error, *a* is not analagous in principle. In that case, a judge, without the State in which he held his office, administered an oath, in regard to some matter within the State. It was held that the administration of the oath was unauthorized, because it was a judicial act. The reason of that case, it must be observed, does not apply to a ministerial act, of which character was the one complained of, and ministerial acts in regard to locality are not controlled in all respects by the same rules which apply to those that are judicial. A judge cannot, when out of the jurisdiction where his duties are to be performed, receive a relinquishment of dower from a feme covert; but he may certify the official character of a clerk of one of his Courts any where. Instead of transmitting the papers and copies of the entries, as expressed in the rule, the clerk might himself have become the bearer, and the respect to which his certificate is entitled as evidence, is not lessened from the circumstance of the solicitor's having had the papers of the cause in his hands before they were certified and delivered by him. By afterwards enveloping and delivering them, he affirmed their genuineness. Again, by the plea of "not guilty," the prisoner admitted himself legally triable on the papers in the Madison Circuit Court; and if he was not, his objections being extrinsic, should have been urged on motion for a new trial.

*a* 1 John. 497.

Having examined the questions upon the reference, we are of opinion that the judgment must be affirmed.

By JUDGE CRENSHAW. In this case I cannot concur in the judgment now rendered by a majority of the Court. In criminal proceedings, I hold it absolutely essential to extend to the party accused all his rights which he has not expressly waived. No citizen can be legally punished unless he has been prosecuted and convicted in pursuance of a law prescribed, and according to the modes of proceeding, which are legal and constitutional. No feature of our criminal jurisprudence is more sacred than that spirit of tenderness and humanity which pervades the whole system. This is the citadel of safety and protection of our rights and liberties, to which we are to resort in times of tumult and violence, and indeed at all times. If a party is to be infamously punished, his conviction must be clearly according to law, otherwise his punishment is illegal and oppressive.

In the case before the Court, I dissent from the opinion of a majority of the Judges, because the Judge who tried the case had no evidence from which he could legally know that the bill of indictment on which the party was tried, was indeed the true indictment. Suppose it was lawful for the clerk of Jackson, after he had carried the papers of the case from his own office to Madison, to certify in Madison county, that they were the true papers of the case, yet I would ask how could he make such a certificate when the papers had been out of his possession for three days, and when it was imposssible for him certainly to know that they were the true papers, though he might have the strongest belief that they were? To say the least of it, I think it a dangerous practice, and it ought not to be, tolerated in a criminal proceeding Furthermore, it was at least doubtful whether it was competent for the clerk of Jackson, out of his office, and in another county, to give a certificate, which was material in a criminal case. And in a criminal proceeding, where the punishment is infamous, I hold that a doubt of the fact or of the law, is tantamount to an acquittal. For these reasons, I am for reversing the judgment, and remanding the case for a trial de novo.

Judgment affirmed.

Judge White not sitting.